# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

JERNIGAN CAPITAL
OPERATING COMPANY, LLC,

      Plaintiff,

      v.

STORAGE PARTNERS OF KOP,
LLC, MM STORAGE PARTNERS,
LP, BRUCE D. MANLEY, and
JONATHON D. MANLY,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Cons. C.A. No. 2019-0462-KSJM

## ORDER RESOLVING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1.     This consolidated action arises out of a business relationship between Plaintiff Jernigan Capital Operating Company, LLC ("Jernigan" or "Plaintiff") and Defendant MM Storage Partners, LP ("MM Storage Partners"). Jernigan and MM Storage Partners were the only two members of Defendant Storage Partners of KOP, LLC. ("Storage Partners of KOP"), a company created to develop and manage a project involving the construction and operation of a self-storage facility in Pennsylvania (the "Project").[1]

---

[1] Cons. C.A. No. 2019-0462-KSJM, Docket ("Dkt.") 29, Def. MM Storage Partners, LP's Answer to Verified Am. Compl. ("Answer") ¶¶ 6, 9; Dkt. 40, Defs.' Answer to Superior Ct. Compl. ("Super. Ct. Answer") ¶¶ 1, 13.

2.    Storage Partners of KOP is governed by the Amended and Restated Limited Liability Company Agreement of Storage Partners of KOP, LLC (the "LLC Agreement"), which is dated March 30, 2018.[2]   Under the LLC Agreement, MM Storage Partners was the "Class A Member" and Jernigan was the "Class B Member."[3]  As the Class A Member, MM Storage Partners was the Managing Member of Storage Partners of KOP.[4]

3.    On March 30, 2018, the same day that Jernigan and MM Storage Partners entered into the LLC Agreement, Jernigan made a loan to Storage Partners of KOP in the amount of $14,377,935 (the "Loan"), which was governed by three agreements: a promissory note outlining repayment terms (the "Promissory Note"); an agreement providing that various aspects of the Project would act as collateral for the Loan (the "Security Agreement"); and an agreement governing the use of the proceeds and other aspects of the Project (the "Construction Loan Agreement," and with the Promissory Note and the Security Agreement, the "Loan Agreements").[5] The Loan proceeds, which were to be gradually disbursed to Storage Partners of KOP after it submitted draw requests (each request, a "Draw Request"), were

---

[2] Dkt. 82, Pl.'s Opening Br. in Supp. of its Mot. for Summ. J. ("Pl.'s Opening Br.") Ex. 1.

[3] LLC Agreement at 1.

[4] *Id.* at 1, 6.

[5] Pl.'s Opening Br. Ex. 2 (Promissory Note); Pl.'s Opening Br. Ex. 3 (Security Agreement); Pl.'s Opening Br. Ex. 4 (Construction Loan Agreement).

intended to be used for the Project.[6] Each Draw Request required: a certification that the funds requested will be used towards the Project; an identification of the person(s) for whom payment is requested; and copies of all bills submitted for the construction work.[7]

4. In connection with the Loan, Jernigan also entered into a guaranty agreement (the "Guaranty") with Bruce D. Manley, Jonathon D. Manley, and MM Storage Partners (collectively, "Guarantors," and together with Storage Partners of KOP, "Defendants").[8] The Guaranty requires the Guarantors to "absolutely, unconditionally and jointly and severally guarantee[] to Lender, its successors and assigns and all subsequent holders of the [Loan], the full and prompt payment of the Guaranteed Obligations."[9]

5. Storage Partners of KOP submitted multiple Draw Requests, which were signed by Bruce as its authorized signatory, but failed to pay in full the related invoices from A&E Construction Co. ("A&E Construction").[10] Despite that failure,

---

[6] *See* Super. Ct. Answer ¶¶ 1, 13; Construction Loan Agreement § 5(c).

[7] *See* Construction Loan Agreement § 5(a)–(b).

[8] Pl.'s Opening Br. Ex. 8 (Guaranty). Because Bruce and Jonathon share the same last name, this Order refers to them by their first names. The court intends no disrespect.

[9] Guaranty § 1. The Guaranty defines "Guaranteed Obligations" as "the entire indebtedness evidenced by the [Loan] and the performance of the covenants contained in the [Loan] or any of the other Loan Documents." Guaranty § 2(b). This Order adopts that definition.

[10] *See* Pl.'s Opening Br. Exs. 17–22.

Bruce continued to represent in subsequent Draw Requests that all amounts owed to the contractors "have been paid in full."[11] In total, Storage Partners of KOP misappropriated $1,454,940.64 in connection with these Draw Requests.[12]

6. On May 1, 2019, when Jernigan learned of the misappropriation, it delivered two notices of default. The first, which Jernigan delivered to Storage Partners of KOP and the Guarantors, demanded both Storage Partners of KOP and the Guarantors "pay[] the full outstanding amount of the Loan."[13] The second, which Jernigan delivered to Bruce and Jonathan, demanded that Storage Partners of KOP allow Jernigan to access the company's books and records pursuant to Section 10 of the LLC Agreement.[14]

7. On May 10, 2019, A&E Construction filed a lien against the property related to the Project (the "A&E Lien"), claiming a total amount due of $2,825,995.60.[15] On May 16, 2019, Jernigan delivered a notice of default to Storage Partners of KOP and the Guarantors demanding that they provide a bond or cash deposit to remove the A&E Lien on or before June 9, 2019.[16] But Storage Partners

---

[11] *See* Pl.'s Opening Br. Exs. 17–20.

[12] Pl.'s Opening Br. at 8; Dkt. 78, Order Granting Pl.'s Mot. for Contempt and Sanctions ("Contempt and Sanctions Order") § 2(a).

[13] Pl.'s Opening Br. Ex. 23 at 2.

[14] Pl.'s Opening Br. Ex. 24 at 2.

[15] Pl.'s Opening Br. Ex. 25 ¶¶ 8–9.

[16] Pl.'s Opening Br. Ex. 26 at 1–2.

of KOP failed to remove the A&E Lien within 30 days.[17]  Instead, on July 12, 2019, Jernigan paid A&E Construction to remove the A&E Lien.[18]

8.      On June 17, 2019, Jernigan delivered written notice to MM Storage Partners of the Events of Default related to the Loan and declared that MM Storage Partners was being removed as Managing Member of Storage Partners of KOP pursuant to Section 7.10 of the LLC Agreement.[19]

9.      Section 7.10 of the LLC Agreement governs the removal of a Managing Member.  It provides:  "Upon . . . an Event of Default relative to the Loan . . . the Class B Member may (but is not obligated to) remove the Class A Member as Managing Member hereof and shall assume the status of Managing Member hereunder, or may appoint a separate Managing Member of its choice."[20]  In such a situation, "[t]he Class B Member may affect such removal by sending to the Class B Member a written notice declaring to the Class A Member that it has been removed as Managing Member."[21]

---

[17] Pl.'s Opening Br. at 9; Contempt and Sanctions Order § 2(b), (d).

[18] Pl.'s Opening Br. Exs. 27–28.

[19] Pl.'s Opening Br. Ex. 29.  The Construction Loan Agreement contains an expansive definition of "Event of Default," which includes the "fail[ure] to comply with the terms and provisions of any other Loan Document."  Construction Loan Agreement § 8(c); *see* § 8.  This Order adopts the definition included in that section of the Construction Loan Agreement.

[20] LLC Agreement § 7.10.

[21] *Id.*

5

10. MM Storage Partners has continued to act as Managing Member of Storage Partners of KOP since Jernigan sent the notice purporting to remove MM Storage Partners as Managing Member.[22]

11. On June 17, 2019, the same day that Plaintiff delivered the written notice, it brought this action seeking to compel the production of certain books and records of Storage Partners of KOP.[23]

12. Plaintiff simultaneously filed a complaint in the Delaware Superior Court (the "Superior Court Action"), asserting four counts: Count I alleges a claim for breach of contract against Storage Partners of KOP for failure to remove the A&E Lien; Count II alleges breach of contract against Storage Partners of KOP and Bruce for making false representations in connection with the Draw Requests; Count III alleges breach of the Guaranty against Jonathon, Bruce, and MM Storage Partners for failing to make full and prompt payment on the Loan after Storage Partners of KOP defaulted; and Count IV alleges fraud against Bruce and Storage Partners of KOP in connection with the Draw Requests.[24]

---

[22] Dkt. 16, Pl. Jernigan Capital Operating Company, LLC's Verified Am. Compl. ("Am. Compl.") ¶¶ 49–50; Pl.'s Opening Br. at 10.

[23] Dkt. 1, Verified Compl. to Compel Inspection of Books and Records Under 8 *Del. C.* Section 220.

[24] Dkt. 36, Pl. Jernigan Capital Operating Company, LLC's Unopposed Mot. To Consolidate Actions ("Mot. to Consolidate") Ex. A ¶¶ 59–110.

13.     On August 6, 2019, Plaintiff filed an amended complaint in this action (the "Amended Complaint").[25]  Count I seeks to compel the production of certain books and records of Storage Partners of KOP pursuant to Section 10.02 of the LLC Agreement.[26]  Count II seeks a declaration pursuant to 6 *Del. C.* § 18-110 that Plaintiff properly removed and replaced MM Storage Partners as the previous Managing Member of Storage Partners of KOP.[27]

14.     On January 7, 2020,[28] the court granted Plaintiff's unopposed motion to consolidate this action with the Superior Court Action.[29]

15.     On May 11, 2020, the court granted Plaintiff's motion for summary judgment on Count I of the Amended Complaint.[30]

16.     Since this action was consolidated, it has been rife with what can reasonably be characterized as bad-faith delay tactics by Defendants.[31]  For example,

---

[25] Am. Compl.

[26] *Id.* ¶¶ 38–46.

[27] *Id.* ¶¶ 47–50.

[28] Mot. to Consolidate.

[29] Dkt. 37, Order Granting Pl. Jernigan Capital Operating Company, LLC's Unopposed Mot. to Consolidate.

[30] Dkt. 52, Order Resolving Pl.'s Mot. for Summ. J. on Count I of the Am. Compl. ¶ 23.

[31] *See* Dkt. 77, Tr. of August 4, 2020 Hr'g Regarding Pl.'s Mot. for Contempt and Sanctions and Rulings of the Ct. at 7:18–23 ("The Manleys and the defendants in this action have now violated multiple orders of this Court, orders that I entered in the belief that I was being generous with them to give them multiple opportunities to comply with their obligations."); *id.* at 7:23–8:3 ("Although I am generally sympathetic to a person's health, it is hard to stomach that excuse when it is raised on the very day when the person is

Defendants failed to comply with the court's order compelling the production of documents and interrogatory responses and failed to appear at the August 4, 2020 evidentiary hearing scheduled to further consider whether sanctions were appropriate.[32]

17.   As a result, on September 18, 2020, the court granted Plaintiff's motion for contempt and sanctions.[33] In the accompanying order, the court awarded plaintiff mandatory adverse inferences that the defendants' documents and discovery responses would show that:

- The defendants misappropriated $1,454,940.64;

- Storage Partners of KOP, under the management and control of MM Storage Partners, breached the Loan Agreements by failing to remove the A&E Lien;

- Storage Partners of KOP submitted falsified Draw Requests, signed by Bruce as its authorized signatory, with the intent to induce the plaintiff to disburse additional money and upon which the plaintiff relied in disbursing additional money;

- MM Storage Partners failure to remove the A&E Lien within 30 days constitutes an "Event of Default" pursuant to Section 7.10 of the LLC Agreement;

- MM Storage Partners, Jonathan, and Bruce materially breached the Guaranty by failing to make full and prompt payment of all Guaranteed Obligations;

---

supposed to appear and answer for their noncompliance with multiple court orders."); *id.* at 8:4–6 ("There's no third chance . . . . I'm going to enter sanctions. . . .").

[32] Contempt and Sanctions Order ¶ C.

[33] Contempt and Sanctions Order.

- Defendants breaches of the Loan Agreements caused Plaintiff to suffer damages in the amount of the entire unpaid balance of the $14,337,950 Loan;

- Bruce's submission of falsified Draw Requests on behalf of Storage Partners of KOP caused Plaintiff to suffer damages in the amount of $1,454,940.64; and

- Each Defendant is jointly and severally liable for the judgment sought, whether through their own fraud or breach of contract or because they are a guarantor.[34]

18. On October 16, 2020, Plaintiff filed a motion for summary judgment seeking judgment in its favor as to Count II of the Amended Complaint and all counts of the Superior Court Action.[35] In its brief, Plaintiff further requests attorneys' fees and expenses in connection with Count II of the Amended Complaint and this motion for summary judgment.[36] The deadline for Defendants to file an answering brief in opposition to the motion for summary judgment was October 30, 2020.[37] Defendants never filed an answering brief. On November 4, 2020, Plaintiff filed a letter with the court observing that Defendants never filed an answering brief and contending that the motion is therefore ripe for decision.[38] This Order resolves that motion.

---

[34] *Id.* ¶ 2.

[35] Dkt. 82, Pl.'s Mot. for Summ. J.

[36] Pl.'s Opening Br. at 22.

[37] Dkt. 81, Am. Scheduling Order Governing Consolidated Action at 2.

[38] Dkt. 88, Letter to the Honorable Kathaleen S. McCormick from Jody C. Barillare, Counsel for Pl. Jernigan Capital Operating Company, LLC, Regarding Defs.' Failure to

## LEGAL ANALYSIS

19. Court of Chancery Rule 56 provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[39] Summary judgment is not warranted, however, "if the parties are in disagreement concerning the factual predicate for the legal principles they advance."[40] Generally, in deciding whether to grant summary judgment, the court must view the evidence in the light most favorable to the non-moving party.[41]

20. "But once the moving party puts facts into the record, which, if undenied, entitle it to summary judgment, the burden shifts to the opposing party to present some evidence to show the existence of a material factual dispute."[42] If the opposing party fails to do so, the court must accept as true the uncontested facts set

---

File an Answering Br. in Opp'n to Pl. Jernigan Capital Operating Company, LLC's Mot. for Summ. J.

[39] Ct. Ch. R. 56(c).

[40] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).

[41] *E.g. id.* at 99–100.

[42] *Union Oil Co. of Cal. v. Mobil Pipeline Co.*, 2006 WL 3770834, at *9 (Del. Ch. Dec. 15, 2006); *accord. Feinberg v. Makhson*, 407 A.2d 201, 203 (Del. 1979); *Gilliland v. Motorola, Inc.*, 859 A.2d 80, 85 (Del. Ch. 2004).

forth in the record.[43] So long as the uncontested facts "provide a legal basis for summary judgment," the court will grant the movant's motion.[44]

21.	This Order first addresses the three breach of contract claims, then the fraud claim, and then the claim brought pursuant to 6 *Del. C.* § 18-110.

22.	To successfully allege a breach of contract, a plaintiff must show the existence of a contract, a breach of the contractual obligations, and damages to the plaintiff as a result of the breach.[45] Because Plaintiff has attached the relevant agreements as exhibits to its motion, and Defendants do not dispute the validity of these contracts, the court need only assess whether the undisputed facts demonstrate that Defendants breached their contractual obligations and whether Plaintiff was damaged as a result.

### Plaintiff Is Entitled to Summary Judgment on Count I of the Superior Court Action.

23.	Plaintiff alleges that Storage Partners of KOP breached the Promissory Note, the Security Instrument, and the Construction Loan by failing to remove the A&E Lien.

---

[43] *Cooke v. Oolie*, 1997 WL 367034, at *7 (Del. Ch. June 23, 1997) ("Uncontested facts properly set forth in the record must be assumed true."); *Gordon v. Nat'l R.R. Passenger Corp.*, 1997 WL 298320, at *3 (Del. Ch. Mar. 19, 1997) (same).

[44] *See Cooke*, 1997 WL 367034, at *7; *Gordon*, 1997 WL 298320, at *3.

[45] *E.g.*, *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *Laser Tone Bus. Sys., LLC v. Del. Micro-Comput. LLC*, 2018 WL 5046807, at *3 (Del. Ch. June 28, 2018).

11

24. The Security Instrument provides that Storage Partners of KOP

> agrees that it will not further encumber or mortgage, and will not permit to be further encumbered or mortgaged, the Property, or any part thereof, or any interest therein and will not suffer to exist any such mortgage or encumbrance, including any liens of any mechanic or materialman that is not removed by bonding or otherwise within 30 days.[46]

25. By failing to remove the A&E Lien within 30 days, Storage Partners of KOP breached the Security Instrument. Because the failure to comply with the terms of any Loan Agreement constitutes a breach under the terms of the Promissory Note and the Construction Loan Agreement,[47] Storage Partners of KOP's failure to remove the A&E Lien constituted a breach of the Promissory Note and the Construction Loan Agreement. These breaches caused Jernigan to incur damages in the amount of $14,337,950—the entire unpaid balance of the Loan.

26. Plaintiff's motion for summary judgment is therefore granted as to Count I of the Superior Court Action.

### Plaintiff Is Entitled to Summary Judgment on Count II of the Superior Court Action.

27. Plaintiff alleges that Storage Partners of KOP and Bruce breached the Promissory Note and the Guaranty by making false representations in connection with the Draw Requests.

---

[46] Security Instrument § 21(a).

[47] *See* Promissory Note § 7; Construction Loan Agreement § 8(c).

28.    Pursuant to the Promissory Note, Storage Partners of KOP and the Guarantors "shall be fully and personally liable . . . in the event of . . . any fraud or misrepresentation by Borrower in or with respect to the Loan Documents."[48] The Guaranty likewise provides that "the limitation on liability set forth in Section 2(a) . . . shall not apply . . . in the event of . . . any fraud or misrepresentation by Borrower in or with respect to the Loan Documents."[49]

29.    Storage Partners of KOP and Bruce breached the Promissory Note by making misrepresentations in connection with the Draw Requests, including that all amounts had been paid to the contractors pursuant to previous Draw Requests.[50] As a result, Jernigan has incurred damages in the amount of $1,454,940.64.

30.    Plaintiff's motion for summary judgment is therefore granted as to Count II of the Superior Court Action.

---

[48] Promissory Note § 12(c)(iv).

[49] Guaranty § 2(b).

[50] Plaintiff only provides evidence relating to "Draw # 9," "Draw # 10," "Draw # 11," and "Draw # 12." *See* Exs. 17–20. But this does not affect the court's finding of breach—the governing documents merely require "any fraud or misrepresentation" to constitute a breach of the agreements.

**Plaintiff Is Entitled to Summary Judgment on**
**Count III of the Superior Court Action.**

31.     Plaintiff alleges that Jonathon, Bruce, and MM Storage Partners breached the Guaranty by failing to make full and prompt payment of the Guaranteed Obligations after an Event of Default.

32.     The Guaranty provides that the Guarantors must make full and prompt payment of the Loan amount "in the event of . . . Borrower's failure to comply with any provision of Sections 20 and 21 of the Security Instrument . . . [or] any fraud or misrepresentation by Borrower in or with respect to the Loan Documents."[51]

33.     The Guarantors failed to remove the A&E Lien within 30 days, and Storage Partners of KOP and Bruce made misrepresentations in the Draw Requests. Each of those triggered the Guarantor's liability for the full Loan amount under the Promissory Note and Guaranty.  Because none of the Guarantors have repaid the Loan in full, even after Jernigan demanded repayment, the parties have breached the Guaranty.  As a result, Jernigan incurred damages in the amount of $14,337,950— the entire unpaid balance of the Loan.

34.     Plaintiff's motion for summary judgment is therefore granted as to Count III of the Superior Court Action.

---

[51] Guaranty § 2(b); *see also* Security Instrument § 21(a) (stating that Storage Partners KOP agrees to prevent the secured property from being further encumbered).

**Plaintiff Is Entitled to Summary Judgment on
Count IV of the Superior Court Action.**

35.     Plaintiff alleges that that Storage Partners of KOP and Bruce engaged in fraud.

36.     The elements of fraud consist of:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[52]

37.     Storage Partners of KOP and Bruce made misrepresentations in connection with the Draw Requests, and they do not dispute that they knew the representations were false or that they made them with reckless indifference. Further, the misrepresentations were intended to induce Jernigan to approve the Draw Requests, which it did in justifiable reliance upon Storage Partners of KOP and Bruce's representation that funds were being used to pay the contractors. As a result, Jernigan suffered damages in the amount $1,454,940.64.

38.     Plaintiff's motion for summary judgment is therefore granted as to Count IV of the Superior Court Action.

---

[52] *Skye Mineral Invs., LLC v. DXS Cap. (U.S.) Ltd.*, 2020 WL 881544, at *34 (Del. Ch. Feb. 24, 2020); *accord. Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

15

## Plaintiff Is Entitled to Summary Judgment on Count II of the Amended Complaint.

39. Plaintiff seeks a declaratory judgment that Jernigan is now the Managing Member of Storage Partners of KOP.

40. Section 18-110 of the LLC Act provides:

> Upon application of any member or manager, the Court of Chancery may hear and determine the validity of any . . . election, appointment, [or] removal . . . of a manager of a limited liability company, and the right of any person to become or continue to be a manager of a limited liability company, and, in case the right to serve as a manager is claimed by more than 1 person, may determine the person or persons entitled to serve as managers . . . .[53]

41. "When the issue being presented for summary judgment is one of contractual interpretation, summary judgment is appropriate where the dispute centers on the proper interpretation of an unambiguous contract."[54] Because Delaware LLCs "are creatures of contract . . . , the starting (and end) point almost always is the parties' bargained-for operating agreement."[55]

42. When MM Storage Partners breached the Guaranty by failing to remove the A&E Lien within 30 days, it triggered an Event of Default under the LLC Agreement. As required by the Section 7.10 of the LLC Agreement, Jernigan

---

[53] 6 *Del. C.* § 18-110.

[54] *2009 Caiola Fam. Tr. v. PWA, LLC*, 2014 WL 1813174, at *7 (Del. Ch. Apr. 30, 2014) (internal quotation marks omitted).

[55] *Franco v. Avalon Freight Servs. LLC*, 2020 WL 7230804, at *2 (Del. Ch. Dec. 8, 2020); *accord. Obeid v. Hogan*, 2016 WL 3356851, at *5 (Del. Ch. June 10, 2016).

provided written notice to MM Storage Partners that Events of Default had occurred and that Jernigan was therefore removing MM Storage Partners as Managing Member. The occurrence of an Event of Default and the written notice that Jernigan provided to MM Storage Partners (attempting to remove it as manager) satisfied the removal requirements of Section 7.10. Accordingly, pursuant to the LLC Agreement, Jernigan "shall assume the status of Managing Member."[56]

43. Plaintiff's motion for summary judgment is therefore granted as to Count II of the Amended Complaint.

### Plaintiff Is Entitled to Its Attorneys' Fees and Expenses in Connection with This Motion.

44. Plaintiff contends that it is entitled to its reasonable attorneys' fees and expenses in connection with Count II of the Amended Complaint and its motion for summary judgment.

45. Delaware courts follow the American Rule that "each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation."[57] Even under the American Rule, however, this court retains the ability to shift fees for bad faith litigation conduct "to deter abusive litigation and to protect the integrity

---

[56] *See* LLC Agreement § 7.10.

[57] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017) (citing *Montgomery Cellular Hldg. Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005)).

of the judicial process."[58]  One way in which bad faith can arise is "if it is shown that the defendant's conduct forced the plaintiff to file suit to 'secure a clearly defined and established right.'"[59]  Another is "where parties have unnecessarily prolonged or delayed litigation."[60]

46.  As provided by the unambiguous LLC Agreement, Jernigan had the contractual right to remove MM Storage Partners as the Managing Member of Storage Partners of KOP if an Event of Default occurred.  MM Storage Partners does not dispute that the LLC Agreement is unambiguous, nor does it dispute that an Event of Default occurred.  MM Storage Partners nonetheless has continued to operate as the Managing Member of Storage Partners of KOP, forcing Plaintiff to bring this suit to enforce its clearly defined rights under the LLC Agreement.

47.  Further, Defendants have engaged in dilatory tactics throughout this litigation, such as refusing to comply with a motion to compel and failing to appear at the August 4, 2020 evidentiary hearing.  Defendants' conduct in this action amounts to "a highly disturbing pattern of deceitful, bad faith conduct that could

---

[58] *Montgomery Cellular*, 880 A.2d at 227 (internal quotation marks omitted).

[59] *McGowan v. Empress Ent.*, 791 A.2d 1, 4 (Del. Ch. 2000) (quoting *Abex Inc. v. Koll Real Est. Gp., Inc.*, 1994 WL 728827, at *20 (Del. Ch. Dec. 22, 1994)).

[60] *Johnston v. Arbitrium (Cayman Is.) Handels AG*, 720 A.2d 542, 546 (Del. 1998).

only have been intended to delay the inevitable day of reckoning."[61]  Defendants do not dispute Plaintiff's assertion that Defendants acted in bad faith.

48.  The court therefore awards Plaintiff its reasonable attorneys' fees and expenses in connection with Count II of the Amended Complaint and its motion for summary judgment.

## CONCLUSION

49.  Plaintiff's motion for summary judgment is GRANTED as to Count II of the Amended Complaint and Counts I–IV of the Superior Court Action.  Plaintiff is also awarded its reasonable attorneys' fees and expenses in connection with Count II of the Amended Complaint and its motion for summary judgment.

/s/ *Kathaleen St. J. McCormick*
Vice Chancellor Kathaleen St. J. McCormick
December 31, 2020

---

[61] *See Arbitrium (Cayman Is.) Handels AG v. Johnston*, 705 A.2d 225, 233 (Del. Ch. 1997), *aff'd*, 720 A.2d 542.